Yvonne M. BOHAC,
Plaintiff/Appellant,

v.

Thomas M. WALSH, Polsinelli, Shalton & Welte, P.C., Montgomery Bank, N.A., The Bank of Advance, Missouri Department of Economic Development, Salim I. Akbani, Akbani Industries, Incorporated, and Sportswear, Incorporated, Defendants/Respondents.

No. ED 88290.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 3, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 16, 2007.

Application for Transfer Denied
June 26, 2007.

Jack F. Allen, Clayton, MO, for appellant.

John S. Sandberg, Russell L. Makepeace, Sandberg, Phoenix & von Gontard P.C., St. Louis, MO, for respondents

Thomas M. Walsh & Polsinelli, Shalton & Welte, P.C.

Thomas W. Collins, III, Blanton, Rice, Sidwell, Nickell, Cozean & Collins, LLC, Shaun D. Hanschen, Sikeston, MO, for respondent Montgomery Bank, N.A.

Thomas W. Millington, Millington, Glass & Love, Springfield, MO, for respondent The Bank of Advance.

Paul C. Evans, Asst. Atty. Gen., St. Louis, MO, for respondent Missouri Department of Economic Development.

Salim I. Akbani, O'Fallon, IL, acting pro se and for Akbani Industries, Inc.

KATHIANNE KNAUP CRANE, Judge.

Plaintiff appeals from a judgment dismissing her lawsuit on the ground that it was barred by the statute of limitations. On appeal, plaintiff contends that the applicable five year statute of limitations for fraud[1] did not run because the Missouri savings statute, Section 516.230 RSMo (2000), applied to extend the statute of limitations to one year after plaintiff suffered a nonsuit in the original action. She also asserts that the trial court erred in determining that defendants' remaining motions to dismiss were moot. In response, defendants argue that the action is barred by the statute of limitations, and alternatively, that the judgment can be affirmed on the grounds stated in the respective motions to dismiss. We affirm because the petition fails to state a claim on which relief could be granted.

On October 21, 2005, plaintiff, Yvonne M. Bohac, filed a petition in the Circuit Court of St. Louis County to recover damages on a theory of misrepresentation and concealment against the following defendants: Thomas M. Walsh; Polsinelli, Shal-

ton & Welte, P.C.; Montgomery Bank, N.A.; The Bank of Advance; the Missouri Department of Economic Development; Salim I. Akbani; Akbani Industries, Inc.; and Sportswear, Inc. She alleged that Mr. Akbani had been her husband from 1984 to 1997; that Mr. Walsh was an attorney who practiced with Suelthaus & Walsh, P.C., which was a predecessor to Polsinelli, Shalton & Welte, P.C. (defendant law firm), and had represented her, Mr. Akbani, and Akbani Industries, Inc. and Sportswear, Inc. (the Akbani businesses) "at all times mentioned" in the petition; that the Akbani businesses had been owned by Mr. Akbani and were dissolved in 1993 and 1998, respectively for failure to file an annual report; and that Missouri Department of Economic Development (DED) was a state agency that had arranged "financings" for Mr. Akbani and the Akbani businesses.

Plaintiff alleged that in August 1994 the Small Business Administration (SBA) declared its loan to Mr. Akbani and the Akbani businesses on a note given to the SBA by Mr. Akbani and the Akbani businesses, which was guaranteed by plaintiff, to be in default. The Bank of Advance and "others" arranged a refinancing. In January and February of 1995, "plaintiff was called into" the law offices of defendant law firm "to sign various financing papers providing for" new guaranties. Mr. Walsh "and another" told plaintiff that if she did not sign the papers, Mr. Akbani would go to jail for defaulting on the loan. Plaintiff further alleged that the SBA, The Bank of Advance, and the DED wanted to keep the employees of the Akbani businesses working and off of welfare. "Acting under those representations" plaintiff signed the "financing papers as a guarantor." She further alleged that "[s]he believed the representations, the representa-

---

1. Section 516.120 RSMo (2000).

tions were material, and she had a right to rely on the representations and did rely on the completeness of the representations."

The petition next alleged that defendants did not tell plaintiff that Mr. Akbani had engaged in bank fraud by check kiting from approximately October 1994 to December 1994 in connection with the operation of the Akbani businesses. She alleged that if she had known of the check kiting scheme, she would not have signed the guaranties. She alleged that she had no fair or reasonable way of knowing about Mr. Akbani's check kiting scheme. She alleged that each of the defendants knew of the check kiting but withheld the information from her because "if she had not been willing to sign the financing papers as guarantor (with her then husband), the refinancing arrangements would not have gone through."

Plaintiff's thirteen-year marriage to Mr. Akbani was dissolved on May 22, 1997. Plaintiff alleged that she did not learn of Mr. Akbani's conviction on bank fraud charges until November 24, 1997.

With respect to damages, plaintiff alleged that in the spring of 1998, creditors foreclosed on the properties of plaintiff, Mr. Akbani, and the Akbani businesses, and in 2000, Mr. Akbani filed for bankruptcy. She further alleged: "Plaintiff because of the guarant[ies] which were fraudulently obtained by defendants and their predecessors, is claimed as owing hundreds of thousands of dollars." Plaintiff alleged her damages included the $1,948,767 that she was "seduced to guarant[y] the obligation to repay" as well as "untold damages in connection with the dissolution of her marriage and events occurring after the dissolution," including her inability to maintain employment, keep her residence, and obtain custody of her children.

Each of the defendants, except the Akbani businesses, filed motions to dismiss. Each of these defendants raised the bar of the statute of limitations. In addition, defendants Montgomery Bank, Bank of Advance, Mr. Walsh, and the defendant law firm all sought dismissal on the ground that the petition failed to state a claim of fraud upon which relief could be granted. The DED filed a motion to dismiss on the basis of its sovereign immunity. Mr. Akbani alleged that plaintiff was the spouse of the attorney who was representing her in the action and moved to dismiss on the ground that the action was frivolous.

After a hearing on the motions, the trial court entered a judgment dismissing the case with prejudice. It recited that at the hearing all defendants joined in The Bank of Advance's motion to dismiss. The court dismissed the lawsuit on the ground that plaintiff's claims were barred by the statute of limitations because plaintiff did not timely file the suit in state court after her claims were dismissed by the federal court pursuant to 28 U.S.C. Section 1367(d), and the Missouri savings statute did not apply. It ruled that the remaining motions to dismiss were moot.

## DISCUSSION

For her first point, plaintiff asserts that the trial court erred when it dismissed her claim on the ground that it was barred by the statute of limitations. For her remaining three points, she makes arguments supporting alternate grounds for the denial of defendants' motions to dismiss for failure to state a claim.

■ We will affirm a judgment of dismissal if it can be sustained on any ground supported by the motion to dismiss. *St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451, 454 (Mo.App.2000). The motions to dismiss were based on the statute of limitations and failure to state a

claim. Plaintiff briefed the merits of the motions to dismiss for failure to state a claim in both her opening and reply briefs. Defendants have also briefed the merits of these motions. Accordingly, we consider whether the judgment can be affirmed on any ground raised in the motions to dismiss.[2] In doing so, we are limiting our analysis to grounds that apply to all defendants. We recognize that other grounds for dismissal may exist with respect to specific defendants.

All defendants joined in Bank of Advance's motion to dismiss. One of the grounds on which that motion was based was failure of the petition to state a claim in fraud upon which relief could be granted. The defense of failure to state a claim upon which relief could be granted is never waived. Rule 55.27(g)(2); *Stine v. Warford*, 18 S.W.3d 601, 604 n. 3 (Mo.App. 2000); *Hohenstreet v. Sterling Nat. Land Co.*, 706 S.W.2d 80, 85 (Mo.App.1986).

■ When we consider whether a petition fails to state a claim upon which relief can be granted, we accept all properly pleaded facts as true, give the pleadings their broadest intendment, and construe all allegations favorably to the pleader. *Arnold v. Erkmann*, 934 S.W.2d 621, 625–26 (Mo.App.1996); *Baugher v. Gates Rubber Co., Inc.*, 863 S.W.2d 905, 907 (Mo.App. 1993).

■ A petition must contain a short and plain statement of the facts showing that the pleader is entitled to relief. Rule 55.05. The petition must allege facts to support each essential element of the cause to be pleaded. *Arnold*, 934 S.W.2d at 626; *Berkowski v. St. Louis County*, 854 S.W.2d 819, 823 (Mo.App.1993). However, we do not consider the pleader's conclusions. *Arnold*, 934 S.W.2d at 626. If the petition contains only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, the petition may be dismissed for failure to state a claim. *Id.; ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 379 (Mo. banc 1993).

■ To state a claim for fraudulent misrepresentation, a plaintiff must plead facts that support each of the following elements:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the representation;

2. We decline to review the claim relating to the statute of limitations. The bar of the statute of limitations is before us on a motion to dismiss, which required the trial court, and would have required us, to decide the legal issues solely on the basis of the allegations in the petition. *Dupree v. Zenith Goldline Pharmaceuticals*, 63 S.W.3d 220, 221 (Mo. banc 2002). In the trial court, plaintiff supplemented her responses to the motions to dismiss with portions of depositions and documents. In this court, some defendants put documents from the federal court records in the appendices to the briefs. The trial court did not treat the motion as a motion for summary judgment. None of these extrinsic materials were properly part of the record in

the trial court and they are not properly in the record on appeal. *Strycharz v. Barlow*, 904 S.W.2d 419, 426 (Mo.App.1995); *Stix & Co., Inc. v. First Mo. Bank & Tr. Co.*, etc., 564 S.W.2d 67, 69 (Mo.App.1978). However, the use and presence of the extrinsic materials indicates to us that this issue could have been more conclusively raised as a motion for summary judgment, with the complete record of the federal proceedings, which might have allowed the trial court to rule on the statute of limitations question on the basis of settled law. Instead, the trial court was presented with a limitations question of first impression in Missouri, at least in the context of modern statutes. We decline to engage in this type of review when we can affirm on other grounds.

(5) the hearer's reliance on its truth;

(6) the hearer's right to rely thereon; and

(7) the hearer's consequent and proximately caused injury.

*Arnold,* 934 S.W.2d at 626; *Stavrides v. Zerjav,* 848 S.W.2d 523, 528 (Mo.App. 1993); *see also, State ex rel. PaineWebber v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995). The rules governing the pleading of fraud are more precise than those that govern the pleading of other types of claims. *Arnold,* 934 S.W.2d at 626; *Miller v. Ford Motor Co.,* 732 S.W.2d 564, 565 (Mo.App.1987). The pleader must state the circumstances of each element of fraud with particularity. Rule 55.15; *Paine-Webber,* 891 S.W.2d at 128; *Arnold,* 934 S.W.2d at 626; *Miller,* 732 S.W.2d at 565. If the petition does not comply with Rule 55.15, no claim is stated. *Hanrahan v. Nashua Corp.,* 752 S.W.2d 878, 882–83 (Mo.App.1988). The fraud must clearly appear from the facts alleged and be independent of conclusions. *Arnold,* 934 S.W.2d at 626; *Miller,* 732 S.W.2d at 565. If any essential element of fraud is not properly pleaded, the petition is fatally defective and subject to dismissal. *Arnold,* 934 S.W.2d at 626; *Miller,* 732 S.W.2d at 565; *Mullen v. G.M.A.C.,* 919 S.W.2d 7, 8 (Mo.App.1996).

### 1. *Misrepresentation*

■ The petition fails to state a claim for fraudulent misrepresentation. The only representation alleged is that one defendant, Mr. Walsh, told plaintiff that if she did not sign the guaranty, Mr. Akbani would go to jail.[3] The petition fails to allege that any defendant other than Mr. Walsh made or authorized this representation, and thus fails to even attempt to make a claim against any defendant other

than Mr. Walsh. *See Hanrahan v. Nashua Corp.,* 752 S.W.2d 878, 883 (Mo.App. 1988). Further, the petition does not state a claim for fraudulent misrepresentation against any defendant, including Mr. Walsh, because it fails to allege 1) that the representation was false, *Arnold,* 934 S.W.2d at 627, or 2) that the speaker knew it was false. *Wieners v. Miller,* 683 S.W.2d 659, 661 (Mo.App.1984). In addition, the petition alleges plaintiff's lack of knowledge, reliance, and right to rely solely as conclusions, without any supporting facts. Thus, the petition fails to set forth the elements of fraudulent misrepresentation with the required particularity against any defendant. *See Custom Craft Tile, Inc. v. Bridgecrest,* 662 S.W.2d 320, 322 (Mo.App.1983).

■ Moreover, even if the elements had been alleged with particularity, the representation that Mr. Akbani would go to jail is not actionable. In the first place, it does not relate to a past or existing fact. To constitute fraud, the alleged misrepresentation must relate to a past or existing fact. *Arnold,* 934 S.W.2d at 626. Statements and representations about expectations and predictions for the future do not constitute fraudulent misrepresentation. *Id.* at 627. Additionally, a statement that an independent third person, here, the criminal justice system, will do some particular thing is not actionable. *Eureka Pipe, Inc. v. Cretcher–Lynch & Co.,* 754 S.W.2d 897, 898–99 (Mo.App.1988).

Secondly, the alleged misrepresentation is not one on which a guarantor may reasonably rely in claiming that he or she was fraudulently induced to sign a guaranty. The Missouri Supreme Court has explained that "[t]he heart of a contract for guaranty is that the signor has agreed to

---

**3.** The allegation about lenders not wanting workers to lose their jobs was not framed in

terms of a representation made by or to anyone.

be liable principally for another's debt." *ITT*, 854 S.W.2d at 386. It has held that in those situations in which a guarantor attempts to avoid liability on a guaranty because of representations made by the guarantee, those representations must go to the nature of the guarantor's obligation under the guaranty in order to make reliance reasonable; representations concerning the debtor's obligation or the strength or weakness of the creditor's position are insufficient. *Id.* Applying this concept to a fraudulent misrepresentation case, the court held that a guarantor could not reasonably rely on representations that did not go to the nature of the guarantor's obligation under the guaranty. *Id.* Thus, representations about the creditor's secured position and the debtor's obligations under the loans being guaranteed were not actionable. *Id.*

In *Colonial Bank v. Ratican*, 806 S.W.2d 460, 463 (Mo.App.1991), which *ITT* cites, the lender sued the defendant guarantor after default on the loan. The guarantor filed a counterclaim against the lender claiming he was fraudulently induced to sign the guaranty because an officer of defendant had orally represented to him that payments defendant would receive in a separate Ponzi scheme involving the officer would be sufficient to meet the note payments. We held that this representation was not one on which the defendant relied or had a right to rely, and defendant had not alleged any misrepresentation of the guaranty. We explained:

> There is no allegation that the document signed by Ratican was in any way altered after his signature, that the contents of the guaranty agreement were in any way concealed from him, that any misrepresentations were made when he signed the agreement of the meaning of its contents, or that he was in any way precluded from examining the document before he signed it. In short, there are

no allegations that the document which he actually signed was in any respect misrepresented to him.

*Colonial Bank*, 806 S.W.2d at 463.

Likewise, in this case the representation on which plaintiff claimed she relied, that Mr. Akbani would go to jail if she did not sign, did not misrepresent the contents of the guaranty and was not one on which plaintiff could reasonably rely. For all of the above reasons, plaintiff has failed to state a claim for fraudulent misrepresentation with respect to any defendant.

### 2. Concealment

Next, we consider if the petition states a claim for fraudulent concealment. Silence or nondisclosure becomes misrepresentation only when there is a duty to speak. *PaineWebber*, 891 S.W.2d at 129; *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. banc 1993). We impose a duty to disclose information when there is a relation of trust and confidence between the parties or when one of the parties has superior knowledge or information not within the fair and reasonable reach of the other party. *Andes*, 853 S.W.2d at 943. The affirmative duty to disclose and the failure to do so serve as a substitute for the false representation element required in a fraud action. *Blaine v. J.E. Jones Constr. Co.*, 841 S.W.2d 703, 705 (Mo.App. 1992). Plaintiff was required to allege particular facts showing that the defendants had a duty to inform her of the check kiting scheme. *See Custom Craft*, 662 S.W.2d at 322.

In her petition, plaintiff set out her theory of defendants' liability as follows:

> 16. Where defendants and their predecessors as the parties acting in connection with the contract or transaction have superior knowledge, or knowledge which is not within the fair and reason-

able reach of plaintiff, and which plaintiff could not discover by the exercise of reasonable diligence, or the means of knowledge which are not open to all parties alike, defendants and their predecessors are under legal obligation to speak, and their silence constitutes fraud, especially when plaintiff relies upon defendants and their predecessors to communicate the true state of facts to enable plaintiff to judge the expedience of the bargain, which plaintiff could not do.

First, we observe that this allegation is a mere legal conclusion. In her petition, plaintiff never alleged these matters as facts. Accordingly, plaintiff has not alleged particular facts, rather than conclusions, that support a duty to disclose based on superior knowledge. *Custom Craft*, 662 S.W.2d at 322. If there is no obligation to disclose, no liability arises from the failure to do so. *Id.* This alone is sufficient basis for dismissal of her claim for fraudulent concealment.

Further, even if fraud had been alleged with particularity, and even if facts had been alleged supporting a claim that any particular defendant had a duty to make disclosures as a party to this transaction, this theory of liability fails as a matter of law because the check kiting scheme was not a fact that was required to be disclosed. When liability is based on a party's superior information, the Restatement (Second) of Torts section 551 sets out the kind of information that must be disclosed. Section 551(2)(e) provides that one party to a business transaction has a duty to disclose

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Comment j to clause (e) explains "facts basic to the transaction":

A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic.

■ Under Missouri law, to be actionable, a misrepresentation in a guarantor's claim based on fraudulent inducement to sign a guaranty must go to the contents of the guaranty. *ITT*, 854 S.W.2d at 386; *Colonial Bank*, 806 S.W.2d at 463. Representations about the security for or payments under the underlying loan are not actionable. *ITT* 854 S.W.2d at 386; *Colonial Bank*, 806 S.W.2d at 463. In the context of a claim that nondisclosure induced a guarantor to sign a guaranty, it follows that "basic facts" that go to the essence of a guaranty are facts that deal with the contents of a guaranty. The fact that a co-guarantor had engaged in a check kiting scheme does not go to the essence of a guaranty, and is not a basic fact that must be disclosed.

The transaction was a guaranty that plaintiff signed in 1995 in connection with a refinancing of the Akbani businesses. The alleged undisclosed fact was the check kiting scheme of Mr. Akbani, who was plaintiff's then husband. The existence of Mr. Akbani's check kiting scheme had no connection with the nature of plaintiff's obligation under the guaranty. It was not a basic fact that any party to the transaction had a duty to disclose.

For all of the above reasons, the petition failed to state a claim for fraudulent concealment with respect to any defendant.

*Conclusion*

The judgment of the trial court is affirmed.

ROY L. RICHTER, P.J., and SHERRI B. SULLIVAN, J., concur.